IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **CAROL J. BARNETT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 15-cv-1018-CJP**[1] |
| | ) | |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner of Social** | ) | |
| **Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## **MEMORANDUM and ORDER**

**PROUD, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), plaintiff Carol J. Barnett, represented by counsel, seeks judicial review of the final agency decision denying her Disability Insurance Benefits (DIB) pursuant to 42 U.S.C. § 423.

### **Procedural History**

Ms. Barnett originally applied for benefits in January, 2010, alleging disability beginning on August 18, 2008. (Tr. 23).  After holding an evidentiary hearing, ALJ Michael Scurry denied the application for benefits in a decision dated February 16, 2012.  (Tr. 23-32).  The Appeals Council denied review, and the decision of the ALJ became the final agency decision.  (Tr. 6-12).  Ms. Barnett sought judicial review, and this Court ordered a remand pursuant to sentence four

---

[1] This case was assigned to the undersigned for final disposition upon consent of the parties pursuant to 28 U.S.C. §636(c).   See, Doc. 9.

of 42 U.S.C. §405(g).   (Tr. 1268-1289).

The case was again assigned to ALJ Scurry, who held another hearing and denied the claim in a decision dated June 24, 2015.   (Tr. 1151-1164).   That decision became the final agency decision subject to judicial review.

Administrative remedies have been exhausted and a timely complaint was filed in this Court.

### Issues Raised by Plaintiff

Plaintiff raises the following points:

1.   The RFC assessment finding plaintiff capable of light work was not supported, particularly in view of the earlier finding that she was capable of only sedentary work.

2.   The ALJ failed to explain why he rejected the results of a Functional Capacity Exam and he failed to consider the effects of plaintiff's obesity,

3.   The ALJ erred in evaluating plaintiff's credibility.

### Applicable Legal Standards

To qualify for DIB, a claimant must be disabled within the meaning of the applicable statutes.   For these purposes, "disabled" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."   42 U.S.C. §423(d)(1)(A).

A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable

Page **2** of **22**

by medically acceptable clinical and laboratory diagnostic techniques.   42 U.S.C.
§423(d)(3).   "Substantial gainful activity" is work activity that involves doing
significant physical or mental activities, and that is done for pay or profit.   20
C.F.R. § 404.1572.

Social Security regulations set forth a sequential five-step inquiry to
determine whether a claimant is disabled.   The Seventh Circuit Court of Appeals
has explained this process as follows:

> The first step considers whether the applicant is engaging in
> substantial gainful activity. The second step evaluates whether an
> alleged physical or mental impairment is severe, medically
> determinable, and meets a durational requirement. The third step
> compares the impairment to a list of impairments that are considered
> conclusively disabling. If the impairment meets or equals one of the
> listed impairments, then the applicant is considered disabled; if the
> impairment does not meet or equal a listed impairment, then the
> evaluation continues. The fourth step assesses an applicant's residual
> functional capacity (RFC) and ability to engage in past relevant work. If
> an applicant can engage in past relevant work, he is not disabled. The
> fifth step assesses the applicant's RFC, as well as his age, education,
> and work experience to determine whether the applicant can engage in
> other work. If the applicant can engage in other work, he is not
> disabled.

*Weatherbee v. Astrue*, 649 F.3d 565, 568-569 (7th Cir. 2011).

Stated another way, it must be determined: (1) whether the claimant is
presently unemployed; (2) whether the claimant has an impairment or combination
of impairments that is serious; (3) whether the impairments meet or equal one of
the listed impairments acknowledged to be conclusively disabling; (4) whether the
claimant can perform past relevant work; and (5) whether the claimant is capable of
performing any work within the economy, given his or her age, education and work

experience.   20 C.F.R. §§ 404.1520; *Simila v. Astrue*, 573 F.3d 503, 512-513 (7th Cir. 2009); *Schroeter v. Sullivan*, 977 F.2d 391, 393 (7th Cir. 1992).

If the answer at steps one and two is "yes," the claimant will automatically be found disabled if he or she suffers from a listed impairment, determined at step three.   If the claimant does not have a listed impairment at step three, and cannot perform his or her past work (step four), the burden shifts to the Commissioner at step five to show that the claimant can perform some other job.   *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984).   *See also Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001) (Under the five-step evaluation, an "affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled…. If a claimant reaches step 5, the burden shifts to the ALJ to establish that the claimant is capable of performing work in the national economy.").

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made.   It is important to recognize that the scope of review is limited.   "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g).   Thus, this Court must determine not whether Ms. Barnett was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made.   See, *Books v. Chater*, 91 F.3d 972, 977-78 (7th Cir. 1996) (citing *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995)).   This Court uses

the Supreme Court's definition of substantial evidence, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Brewer v. Chater*, 103 F.3d 1384, 1390 (7th Cir. 1997). However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. See, *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

## The Decision of the ALJ

ALJ Scurry followed the five-step analytical framework described above. He determined that Ms. Barnett had not been engaged in substantial gainful activity since the alleged onset date, and that she was insured for DIB through June 30, 2016.[2] He found that plaintiff had severe impairments of cervical degenerative disc disease, thoracic degenerative disc disease with bulging at T6-7, degenerative changes at L4-5, obesity, and history of left shoulder rotator cuff repair. He further determined that these impairments do not meet or equal a listed impairment.

The ALJ found that Ms. Barnett had the residual functional capacity (RFC) to

---

[2] In his prior decision, the ALJ found that Ms. Barnett was insured for DIB only through June 30, 2014. (Tr. 25). The record does not explain the discrepancy.

perform the full range of work at the light exertional level.   Based on the testimony of a vocational expert, the ALJ found that plaintiff was able to do her past work as a postal clerk as that job is generally performed.

### The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order.   The following summary of the record is directed to the points raised by plaintiff and is confined to the relevant time period.

**1.    Agency Forms**

Ms. Barnett was born in 1959.   She was almost 49 years old on the alleged onset date.   (Tr. 140).   She completed two years of college.   (Tr. 155).

Plaintiff filed a Disability Report in January, 2010, in which she said her ability to work was limited by back pain, a shoulder injury, diabetes, high blood pressure, neuropathy in her left arm and a fatty liver.   She was 5'6" and weighed 180 pounds.   (Tr. 154).   In June, 2010, she reported that her middle back pain was getting worse and her left shoulder hurt when she lifted too much.   She was "constantly changing positions due to pain."   She had to prop her legs up to relieve swelling in her feet and ankles.   (Tr. 167).

**3.    Evidentiary Hearing**

Ms. Barnett was represented by an attorney at the evidentiary hearing on June 24, 2015.   (Tr. 1175).

Ms. Barnett was 55 years old at the time of her hearing.  (Tr. 1184).  She testified that "nothing has really changed" since 2012.  (Tr. 1183).  She said her back felt better when she went to a chiropractor, but it got worse when she did not go as often.  (Tr. 1182-1183).

Plaintiff started working for the post office in 1985 as postal clerk.  She became a postmaster in a small post office in 2003.  She retired from the post office in 2012, but she actually last worked in August 2008.  The postmaster job required that she be able to lift 50 pounds, but her doctor restricted her to lifting 30 pounds, so she was not able to return to work.  (Tr. 1185-1188).

Ms. Barnett was initially injured in a vehicular accident.  She made a claim against the other driver.  She settled the case out of court and netted about $140,000.00.[3]  (Tr. 1188-1189).

Plaintiff testified that she did not do much.  She said she did no housework. She did a little light cooking.  She said she did not exercise much because it irritated her low back.  She went to church but no longer did any volunteer activities. Her husband did the cleaning.  She folded laundry while sitting.  At one point she told Dr. Migone that she exercised an hour a day with her husband.  They were walking in the mornings then, but she could no longer do that.  She could only walk for 15 to 20 minutes.  (Tr. 1190-1192).  She used ice and heat to control her pain, and did exercises that the chiropractor gave her.  She laid down a

[3] Ms. Barnett's personal injury claim was settled in April 2014 for the gross amount of $295,000.00. See, Tr. 1431-1435.

lot.   (Tr. 1194-1195).

A vocational expert (VE) testified that plaintiff's past work as a postmaster is classified as sedentary and skilled in the *Dictionary of Occupational Titles*, and was performed by her at the medium exertional level.   Her job as a postal clerk is classified as light.   (Tr. 1206).   The VE testified that, if she were able to perform a full range of light work, she could do both the jobs of postal clerk and postmaster as they are generally performed in the national economy.   In response to whether the skills plaintiff acquired in her past work are transferrable, the VE testified that her skills were "occupation specific."   (Tr. 1207).   If she were also limited to only occasional reaching, both postal jobs would be precluded.   (Tr. 1215).

### 4.   Medical Records

Plaintiff was involved in a vehicular accident on August 18, 2008.   She was treated in the emergency room and discharged to home.   X-rays showed degenerative changes of the cervical spine, mild degenerative disc disease at L4-5, and mild degenerative disc disease in the mid-thoracic spine.   There were no fractures.   (Tr. 374-382).   She had pain in her left shoulder following the accident.   (Tr. 401).

In March, 2009, Dr. John Wood performed surgery to repair a torn left rotator cuff.   (Tr. 387-388).   Because of possible infection, the surgical site was reopened and debrided in April, 2009.   Dr. Wood indicated this may have been related to her diabetes.   (Tr. 383-384).   In June, 2009, she was progressing well in physical therapy, but Dr. Wood cautioned that her shoulder "would not be 100%

ever."   (Tr. 409).   In August, 2009, although her shoulder was not 100%, plaintiff was willing to try to go back to work.   Dr. Wood authorized another 6 weeks of physical therapy.   (Tr. 410).   On October 23, 2009, Dr. Wood noted that she was lifting 31 pounds in therapy.   She had "progressed nicely" and was doing well with regard to strength and range of motion.   She was having some back problems and ulnar neuropathy, for which she was being treated by Dr. Migone.   Dr. Wood released her to return to full work duties.   (Tr. 411-412).

Dr. Ana Migone was plaintiff's primary care physician.   She saw plaintiff for complaints of neck, back and left shoulder pain in 2009 and 2010.   Dr. Migone also managed her diabetes and high blood pressure.   On November 16, 2009, Dr. Migone wrote that she could return to work on December 16, 2009, with no restrictions.   (Tr. 759-787).   On November 25, 2009, Dr. Migone wrote that plaintiff could return to work on December 16, 2009, but she was restricted to no lifting over 30 pounds.   (Tr. 753).

Dr. Brent Newell, a rehabilitation specialist, saw plaintiff for low back and shoulder pain in December, 2009.   On exam, she could forward flex, extend, side bend and twist at the waist with no difficulty.   She had tenderness to palpation in the lower thoracic and lumbar areas.   (Tr. 713-714).   An MRI of the thoracic spine showed mild bulging of T6-7 with mild encroachment on the ventral thecal sac and central left neural foramina.   An MRI of the lumbar spine showed degenerative changes and a bulging disc at L4-5.   (Tr. 715-716).

Dr. Newell saw her again in April, 2010.   Ms. Barnett told the doctor that her

back pain had flared up since he last saw her.    She had been taking Celebrex, but it was no longer helping.    On exam, she had a limited range of motion secondary to pain.    Straight leg raising and Patrick's test were negative.    Dr. Newell indicated that she was "just deconditioned at this point" and he recommended physical therapy.    (Tr. 952-953).    In June, 2010, Dr. Newell noted that rehab services had indicated that she could do light to sedentary work.    She was getting ready to go on a mission trip to Africa, so he refilled her Ultram.    (Tr. 950).

In June, 2010, Dr. Migone wrote that plaintiff was unable to lift more than 30 pounds.    (Tr. 986).    In October, 2010, she wrote a letter stating that a functional capacity evaluation placed her in the light to medium physical demand level, and that she would be best suited for a light to sedentary position that would allow her to change positions frequently.    (Tr. 972).

Ms. Barnett saw Dr. Migone in July, 2011.    She was still complaining of low back and left shoulder pain that was worse with moderate activity.    On exam, the lumbar spine had SI tenderness.    Straight leg raising was negative.    She had tenderness and mildly reduced range of motion in the left shoulder.    There was no swelling in the extremities.    There was no sensory loss or motor weakness.    She was getting ready to go on another mission trip to Africa.    She was to continue her home exercises and take Tramadol as needed for back and shoulder pain.    (Tr. 1076-1080).

On December 15, 2011, plaintiff complained to Dr. Migone of persistent low back pain that had, at times, radiated into both calves, both thighs, the upper back

and left arm.   Her gait was normal.   She had muscle spasms and mild tenderness with motion of the lumbar spine.   Straight leg raising caused radiating pain on both sides.   She was able to heel and toe walk.   (Tr. 1124-1125).

The administrative transcript contains three sets of relevant medical records submitted after the first ALJ decision denying plaintiff's claim.

Ms. Barnett continued to see Dr. Migone, her primary care physician, for various conditions including management of her diabetes and hypertension.   In January 2012, Dr. Migone noted on musculoskeletal exam that she had a normal range of motion, muscle strength, and stability in all extremities with no pain on inspection.   (Tr. 1679).   The review of systems was negative for bone or joint symptoms, muscle weakness, or myalgia. (Tr. 1678).   In April 2012, there was no mention of any neck, back or shoulder pain.   Dr. Migone instructed her to increase her exercise to one hour a day, at least five days a week.   (Tr. 1664-1667).

In November 2012, plaintiff complained to Dr. Migone of low back pain on and off, related to a prior accident.   She noted no objective findings and provided no treatment for back pain.   (Tr. 1647-1650).   In January 2013, Ms. Barnett said her low back pain had been increased by helping with preparations for the holidays. Flexeril helped but made her sleepy.   Dr. Migone prescribed physical therapy, orphenadrine citrate and diclofenac.[4] (Tr. 1639-1645).

---

[4] Orphenadrine citrate is prescribed "for the relief of discomfort associated with acute painful musculo skeletal conditions."   https://www.drugs.com/pro/orphenadrine-extended- release–tablets .html.   Diclofenac is a nonsteroidal anti-inflammatory drug.   https://www.drugs.com /diclofenac .html.   Both sites were visited on September 2, 2016.

Dr. Migone saw plaintiff for an annual physical exam in February 2013.   On musculoskeletal exam, she had a normal range of motion, muscle strength, and stability in all extremities with no pain on inspection.   (Tr. 1626-1632).

In May 2013, she was seen for management of diabetes and high blood pressure.   There was no mention of back pain.   (Tr. 1608-1612).   In August 2013, she said her back bothered her "every now and then."   (Tr. 1600).   There was no mention of back pain at a visit in January 2014.   (Tr. 1590-1594).

Dr. Migone saw plaintiff for an annual physical exam in July 2014.   It was noted that she exercised five to 10 hours a week.   The review of systems was negative for bone or joint symptoms, muscle weakness, and myalgia. Musculoskeletal exam showed a normal range of motion, muscle strength, and stability in all extremities with no pain on inspection.   Her list of medications did not include any prescription pain medications or muscle relaxers.   (Tr. 1580-1586).

Plaintiff's last visit with Dr. Migone was in May 2015.   She had not been seen since August 2014.   There was no mention of neck, shoulder or back pain.   Her list of medications did not include any prescription pain medications or muscle relaxers.   (Tr. 1558-1563).

Ms. Barnett was treated by Brian Bird, D.C., approximately 38 times between February 17, 2014, and April 20, 2015.   (Tr. 1457-1531).   On the first visit, x-rays of the cervical, thoracic and lumbar spine showed osteophyte formation at various levels in the cervical, thoracic and lumbar spine, with decreased disc

spaces at L4-5 and L5-S1, as well as foraminal encroachment at L4-5.   (Tr. 1524).

Dr. Bird administered the Oswestry questionnaire on the first visit, which is a ten-part questionnaire used to assess the effects of the patient's pain on her functioning.   Plaintiff indicated that her pain "comes and goes and is moderate." She could lift very light weights at most, and could not walk for more than ½ mile. She could not sit or stand for more than one hour due to pain.   Dr. Bird concluded that her score was 52, placing her in the "40-60% range indicating a severe disability."   (Tr. 1530).   Dr. Bird's notes consistently state that she was improving.   On March 11, 2014, she reported that she had less pain in her low back.   (Tr. 1516).   Dr. Bird administered the Oswestry questionnaire again on March 12, 2014.   Plaintiff indicated that her pain "comes and goes and is very mild."   She said she could lift heavy weights, but it caused extra pain.   Pain did not prevent her from walking any distance and she could sit and stand for as long as she liked.   She reported that her pain was "rapidly getting better."   Her pain score was 4, indicating "a minimal disability."   (Tr. 1513-1514).   From March 24, 2014, to December 29, 2014, every office note contained the following remark: "Bending, Lifting, Turning/twisting, Walking better or with out [sic] assistance, Sitting without or with less pain, Standing for longer periods with out [sic] pain, Sleeping better."   See, e.g., Tr. 1506, 1504, 1502, 1500, 1463.   On the last visit, Dr. Bird noted that her pain, asymmetry, range of motion, and tissue were all "better."   (Tr. 1458).

Ms. Barnett was also seen by a gastroenterologist, Dr. Sushilkumar

Tibrewala, during this period.   Dr. Migone referred her to Dr. Tibrewala for management of her nonalcoholic fatty liver.   She was seen five times between December 2011 and September 2013.   On each visit, Dr. Tibrewala noted that she had a normal range of motion of her neck and that the range of motion of all major muscle groups was normal, muscle strength was full in all major muscle groups, and she had normal overall muscle tone.   (Tr. 1532-1551).

## Analysis

The Court agrees with plaintiff's first point in that ALJ Scurry did not adequately explain why he changed his RFC assessment from sedentary to light work.

In his February 2012 decision, ALJ Scurry determined that Ms. Barnett had the RFC to do a full range of sedentary work.   Based on the testimony of a vocational expert, the ALJ determined that Ms. Barnett was able to do her past work as a postmaster as that job is usually performed in the national economy. This Court found that determination to be legally erroneous because Ms. Barnett's postmaster job was a composite job, and, pursuant to the agency's own procedures, a composite job cannot be considered at Step 4.   This Court also noted that, "Ms. Barnett was 52 years old on the date of the ALJ's decision and was 54 years old on her date last insured.   If she is capable of doing a full range of sedentary work, but cannot do her past relevant work, the Grids dictate that she is disabled unless she has transferrable skills."   See, Tr. 1278-1283.   The Court also directed that the ALJ should take a "fresh look" at plaintiff's RFC and credibility in light of additional

evidence that had been submitted to the Appeals Council.   See, Tr. 1283.

The Appeals Council then vacated the ALJ's prior decision and remanded for further proceedings consistent with this Court's order.   (Tr. 1292).   When a case is remanded by the Appeals Council, "The administrative law judge shall take any action that is ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeals Council's remand order."   20 C.F.R. §404.977(b).   Further, on remand by the Appeals Council after remand by the Court, "[a]ny issues relating to your claim may be considered by the administrative law judge whether or not they were raised in the administrative proceedings leading to the final decision in your case."   20 C.F.R. §404.983.

Plaintiff does not argue that the ALJ was somehow estopped from reconsidering her RFC on remand.   In view of this Court's prior order, the Appeals Council's remand order, and the regulations cited above, such an argument would not succeed.   However, she does persuasively argue that the ALJ did not sufficiently explain how his determination that she had the RFC to perform a full range of light work instead of sedentary work was supported by the evidence.

The ALJ acknowledged in a footnote that he had previously found that plaintiff was capable of only sedentary work.   He explained that he changed his RFC assessment for the following reason:

> However, having the benefit of reviewing another three-and-a-half years of medical records, the vast majority of which demonstrate that the claimant has had only some tenderness or muscle spasm but no other noteworthy positive findings with regard to her left shoulder and back, the undersigned concludes that it is more reasonable and supported to

limit the claimant to light rather than sedentary work.

Tr. 1161, note 1.

The additional three-and-a-half years of medical records referenced in the footnote are the records submitted after remand, i.e., the records of Drs. Bird, Migone, and Tibrewala spanning the period from December 2011 to May 2015.

Ms. Barnett alleged disability beginning on August 18, 2008. ALJ Scurry's first decision denying her application was dated February 16, 2012. (Tr. 20-37). He made no attempt at all in his 2015 decision to explain how records from December 2011 and later could have caused him to abandon his conclusion that she was limited to sedentary work as of February 16, 2012. Notably, Dr. Bird did not even begin to treat plaintiff until February 2014.

The Commissioner argues that the ALJ was not bound by his previous RFC finding and was not required to demonstrate medical improvement in explaining why he changed his mind. See, Doc. 29, pp. 12-13. The Court agrees, but that argument does not meet plaintiff's point, which is that the ALJ failed to explain how the new medical records supported a finding that plaintiff has been able to do the full range of light work since August 18, 2008. As to that point, she argues only that the medical evidence as a whole supports a finding that plaintiff is capable of light work. That argument suffers from the same inadequacy as the ALJ's new decision in that it does not address the central question of how new records caused the ALJ to change his previous determination that Ms. Barnett was capable of only sedentary work from August 18, 2008, to February 16, 2002.

The difference between an RFC for sedentary or light work is dispositive in this case because of Ms. Barnett's age. She was born in September 1959 and turned 50 in September 2009. A person aged 50 to 54 is considered to be "closely approaching advanced age." 20 C.F.R. §404.1563(d). As was previously explained, after the age of 50, if Ms. Barnett is limited to sedentary work, cannot do her past relevant work, and has no transferrable skills, she would be deemed disabled under the Grids. 20 C.F.R. Part 404, Subpart P, Appendix 2, §200.00(g); Rules 201.12-201.16.[5]

Plaintiff argues that the Court should order an award of benefits for at least the period from August 8, 2008, through the date of the ALJ's first decision because the evidence establishes that she was limited to sedentary work at least for that period. "An award of benefits is appropriate, however, only if all factual issues involved in the entitlement determination have been resolved and the resulting record supports only one conclusion—that the applicant qualifies for disability benefits." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011), citing *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005).

Here, the Court cannot say that all factual issues have been resolved and that the record supports only one conclusion. The record contains competing evidence. It is not the function of this Court to reweigh the evidence or substitute

---

[5] The Grids (20 C.F.R. Part 404, Subpart P, Appendix 2) are appropriate where the claimant has no nonexertional limitations and has the RFC to do a full range of work at a specified exertional level. 20 C.F.R. Part 404, Subpart P, Appendix 2, §200.00(e). See also, *Haynes v. Barnhart*, 416 F.3d 621, 628-629 (7th Cir. 2005).

its own judgment for that of the ALJ.  *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015), citing *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012).  Rather, conflicts in the evidence must be resolved by an ALJ.

Plaintiff's second point regarding the weight afforded to the functional capacity exam is also well-taken.  The ALJ gave no weight to the opinion of the occupational therapist who performed the exam and authored the report because she is not an acceptable medical source and because her opinion was not consistent with the conservative course of treatment and the medical evidence "over the past six years."  (Tr. 1162-1163).

The fact that the therapist is not an acceptable medical source is not a valid reason to assign no weight to her opinion.  An occupational therapist is not an "acceptable medical source" under 20 C.F.R. §404.1513.  Her report therefore does constitute a "medical opinion."  See, 20 C.F.R. §404.1527(a)(2) ("Medical opinions are statements from physicians and psychologists or other acceptable medical sources. . . .)"  Accordingly, the occupational therapist's opinion is not entitled to any special weight under §404.1527(c).  SSR 06-03p, 2006 WL 2329939, at *2.  This does not mean, however, that the ALJ may simply ignore the opinions of medical sources such as an occupational therapist.  The ALJ is required to consider "all relevant evidence" and may, as appropriate, consider the factors set forth in 20 C.F.R. §404.1527(c) in the process of weighing the opinions of nonacceptable medical sources.  SSR 06-3p, at * 4-5.  Evidence from other sources "may be used to 'show the severity of [the applicant's] impairment(s) and

how it affects [his or her] ability to work.'"   *Voigt v. Colvin*, 781 F.3d 871, 878 (7th Cir. 2015), citing, 20 C.F.R. §§ 404.1513(a), (d), (d)(1).

There is little indication that the ALJ considered the factors set forth in §404.1527(c) in weighing the therapist's opinion.   He did state that it was inconsistent with other medical records.   However his reasoning here is suspect. The functional capacity exam was done on June 14, 2010.   (Tr. 944-946).   Any inconsistency with records reflecting events as much as six years later would not necessarily undermine the correctness of the report at the time it was issued.   See, *Scrogham v. Colvin*, 765 F.3d 685, 697 (7th Cir. 2014), criticizing the ALJ for failing to explain how non-contemporaneous events conflicted with a medical report.   Particularly in the circumstances of this case, where the ALJ concluded that the record up to February 16, 2012, supported an RFC of sedentary work, it was error for the ALJ to dismiss the functional capacity exam report because it "conflicted" with records created years later.   And, the ALJ's comment that plaintiff's treatment was conservative ignores the fact that she had surgery on her shoulder, followed by an irrigation and debridement procedure a month later due to possible infection.

Lastly, the Court rejects plaintiff's last point regarding the credibility determination.

The Court must use an "extremely deferential" standard in reviewing an ALJ's credibility finding.   *Bates v. Colvin*, 736 F.3d 1093, 1098 (7th Cir. 2013). The Court cannot reweigh the facts or reconsider the evidence, and can upset the

ALJ's finding only if it is "patently wrong." *Ibid*.   Social Security regulations and Seventh Circuit cases "taken together, require an ALJ to articulate specific reasons for discounting a claimant's testimony as being less than credible, and preclude an ALJ from 'merely ignoring' the testimony or relying solely on a conflict between the objective medical evidence and the claimant's testimony as a basis for a negative credibility finding."   *Schmidt v. Barnhart*, 395 F.3d 737, 746-747 (7th Cir. 2005), and cases cited therein.

SSR 96-7p requires the ALJ to consider a number of factors in assessing the claimant's credibility, including the objective medical evidence, the claimant's daily activities, medication for the relief of pain, and "any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms." SSR 96-7p, 1996 WL 374186, at *3.   While plaintiff's claims cannot be rejected solely because they are not supported by objective evidence, 20 C.F.R. §404.1529(c)(2), the ALJ may take that fact into consideration, since "discrepancies between objective evidence and self-reports may suggest symptom exaggeration."   *Getch v. Astrue*, 539 F.3d 473, 483 (7th Cir. 2008).

Here, ALJ Scurry gave a number of reasons for his credibility determination. He cited to the medical records, noting a series of exams showing normal range of motion, motor strength, sensation, reflexes and straight leg raising tests.   He considered her daily activities, noting that she did light cooking, shopped, took Bible classes, regularly drove or rode as a passenger for 30 miles to visit her mother, volunteered at her church, told her doctor that she exercised for 5 to 10

hours a week, and was able to take two trips to Africa.   He pointed out that she had not used prescription medical for her back or shoulder in the last year.[6] (Tr. 1161-1162).   The ALJ also noted in another section of his decision that Ms. Barnett told Dr. Bird in 2014 that her pain was mild and did not prevent her from walking and that she could sit or stand for as long as she liked.   (Tr. 1160).   The ALJ also correctly noted that plaintiff's doctor cleared her to return to work with a 30 pound weight restriction, and the reason she did not return to her postmaster job was that it required the ability to lift heavier weights.   (Tr. 1162).

The factors considered by the ALJ were proper under SSR 96-7p.   The ALJ did not, as plaintiff suggests, err in considering her daily activities.   While it may be error to equate limited daily activities with the ability to work full-time, it is not error to consider daily activities; in fact, is proper for an ALJ to consider a conflict between the plaintiff's claims about what she can do and the evidence as to her activities.   See, *Pepper v. Colvin*, 712 F.3d 351, 369 (7th Cir. 2013).   And, the fact that Mr. Barnett was able to fly to Africa twice was certainly relevant to the credibility of her allegation that she was severely limited in her ability to sit for any length of time.   See, *Mitze v. Colvin*, 782 F.3d 879, 882 (7th Cir. 2015), finding no error in considering plaintiff's ability to fly to Australia in assessing her credibility.

---

[6] Plaintiff argues that the ALJ's statement about prescription medication was incorrect because she was, in fact, taking various prescriptions.   See, Doc. 21, p. 19; Doc. 30, p. 4.   However, the ALJ specified that she was not taking "prescription medications for her back/shoulder over the past year."   (Tr. 1161).   In context, he was clearly referring to pain medications.   While plaintiff was taking other kinds of prescription medications, she was not taking any prescription pain medication for her shoulder or back during the period referenced by the ALJ.   Advancing a factually incorrect argument such as this detracts from other, well-reasoned points and wastes the Court's time.

Because the ALJ failed to explain why he changed his RFC assessment from sedentary to light, and because he failed to properly weight the functional capacity exam, this case must be remanded.  Remand is required where, as here, the decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review."  *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2010), citing *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

The Court wishes to stress that this Memorandum and Order should not be construed as an indication that the Court believes that Ms. Barnett is disabled or that she should be awarded benefits.  On the contrary, the Court has not formed any opinions in that regard, and leaves those issues to be determined by the Commissioner after further proceedings.

### Conclusion

The Commissioner's final decision denying Carol J. Barnett's application for social security disability benefits is **REVERSED** and **REMANDED** to the Commissioner for rehearing and reconsideration of the evidence, pursuant to sentence four of 42 U.S.C. §405(g).

The Clerk of Court is directed to enter judgment in favor of plaintiff.

**IT IS SO ORDRED.**

**DATE:   September 2, 2016.**

> **s/ Clifford J. Proud**
> **CLIFFORD J. PROUD**
> **UNITED STATES MAGISTRATE JUDGE**